IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>$1,379,879.09 SEIZED FROM BANK OF AMERICA ACCOUNT NUMBER W71-223433 IN THE NAME OF EUROPEAN FEDERAL CREDIT BANK, ET AL.,<br><br>    Defendants. | No. C 05-00946 CRB<br><br>**ORDER GRANTING IN PART & DENYING IN PART MOTION FOR ATTORNEY'S FEES & COSTS** |

Now pending before the Court is Claimant European Federal Credit Bank's ("Eurofed) motion for attorney's fees and costs. The Court finds that Eurofed is entitled to reasonable fees because it "substantially prevailed" in this action and is not barred from fees as the result of any criminal conviction. The Court also finds that Eurofed's requested fees in the amount of $289,463.75 is reasonable, and such fees are GRANTED. Costs in the amount of $10,279.05 are DENIED as insufficiently documented. The hearing scheduled for July 25, 2008 is VACATED.

**BACKGROUND**

On March 7, 2005, the United States government seized three accounts held by Bank of America in the name of Eurofed, containing approximately $1.7 million plus 923,000

1  Ukranian bonds. The government seized the funds pursuant to its powers under the federal
2  civil forfeiture statute, 18 U.S.C. § 981, which permits forfeiture of any property involved in
3  a transaction or attempted transaction in violation of the federal wire fraud statute, or any
4  property traceable to such property. In its complaint, the government alleged that the Bank of
5  America accounts contained "proceeds derived from, traceable to and involved in money
6  laundering transactions" carried out by Pavel Lazarenko, a former Ukranian Prime Minister
7  and part owner of Eurofed.

8  Eurofed, as a claimant to the seized property, filed a motion for summary judgment,
9  arguing that the government's seizure was barred by the five-year statute of limitations set
10 forth in § 981(d). The civil forfeiture statute's limitations provision requires that the
11 government commence its action "within five years after the time when the alleged offense
12 was discovered." 19 U.S.C. § 1621, cited in 18 U.S.C. § 981(d). In its response to Eurofed's
13 motion for summary judgment – filed approximately seven months after the complaint – the
14 government conceded that its civil forfeiture action was time-barred. The government
15 requested that the Court issue an order authorizing seizure of the same res by way of criminal
16 forfeiture.

17 On October 26, 2005, the Court granted Eurofed's motion for summary judgment,
18 concluding that the government's civil forfeiture action was time-barred. Accordingly, the
19 Court dismissed the complaint as untimely. On that same day, the government effectuated a
20 re-seizure of the forfeited funds pursuant to a federal criminal forfeiture statute, 18 U.S.C. §
21 982, which subjects a defendant to forfeiture of any property, real or personal, involved in or
22 traceable to conduct supporting a conviction for wire fraud. Id. § 982(a)(1). The
23 government submitted an affidavit contending that the Eurofed accounts were "traceable to"
24 Lazarenko's criminal conduct. Eurofed has challenged the government's re-seizure of the
25 Bank of America accounts, and their challenge remains pending before this Court.

26 After the Court granted summary judgment to Eurofed, the bank moved for attorney's
27 fees and costs. The government opposes the motion on the ground that Eurofed's request is
28 unreasonable and excessive and that, in any event, Eurofed is not entitled to fees.

2

**LEGAL STANDARD**

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") implemented a comprehensive revision of civil asset forfeiture law in the United States through the amendment of three statutes: 18 U.S.C. §§ 983 and 985, and 28 U.S.C. § 2465. In its amendment of 28 U.S.C. § 2465, CAFRA provided for the payment of attorney's fees, litigation costs, and post-judgment interest by the government in certain circumstances. Specifically, Congress amended CAFRA to provide that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for . . . reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A).

In passing CAFRA, Congress was reacting to public outcry over the government's too-zealous pursuit of civil forfeiture. See H.R. Rep. No. 105-358(I), 1997 WL 677201, at *21-27 (1997). The addition of an attorney's fees provision was "part and parcel" of this effort to deter government overreaching. United States v. Khan, 497 F.3d 204, 208 (2d Cir. 2007). Congress, however, did not intend to provide convicted criminals with a method for obtaining fees from the government. As a result, Congress also included a provision barring claimants from recovering attorney's fees "if the claimant is convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law." 28 U.S.C. § 2465(b)(2)(B).

This motion requires that the Court confront three questions. First, is Eurofed entitled to fees and costs because it "substantially prevail[ed]" in this proceeding? Second, even if Eurofed prevailed, is it barred from recovery because the criminal conviction of Pavel Lazarenko – as part owner of Eurofed – must be imputed to the bank? And third, if Eurofed is not barred from recovering fees, what is a "reasonable" amount? The Court addresses each issue in turn.

///

**DISCUSSION**

I. Substantially Prevails

In Synagogue v. United States, 482 F.3d 1058 (9th Cir. 2007), the Ninth Circuit held that the term "substantially prevails," as used in § 2465, must be interpreted in light of the case law defining the term "prevailing party" in the context of the fee-shifting provisions of the Fair Housing Amendments Act of 1988. See id. at 1062-63; see also Oil, Chemical & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 455 (D.C. Cir. 2002) ("We have seen nothing to suggest that Congress sought to draw any fine distinction between 'prevailing party' and 'substantially prevail.'").  Thus, a party "substantially prevails" when he "achieves an alteration in the legal relationship of the parties" that bears a "judicial imprimatur on the change." Synagogue, 482 F.3d at 1063 (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 600 (2001)).

Eurofed substantially prevailed in this action because they satisfy both of the Buckhannon criteria.  First, Eurofed achieved an alteration in the legal relationship of the parties by preventing the government from seizing the Bank of America funds through civil forfeiture.  The government contends that Eurofed did not substantially prevail because they did not alter the relationship of the parties to the res; that is, Eurofed cannot be considered to have prevailed unless and until Eurofed also prevents the government from effecting seizure through criminal forfeiture and thereby ensures a return of the seized accounts.

The government's argument is unpersuasive because it improperly focuses upon the parties' relationship to the res, rather than the parties' relationship to each other.  A party can prevail – even if he does not obtain his ultimate objective – so long as the party "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought . . . ." Nat'l Wildlife Fed'n v. Fed. Energy Regulatory Comm'n, 870 F.2d 542, 544 (9th Cir. 1989) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Forcing the government to seize the Bank of America accounts through its criminal forfeiture powers – by precluding the government from using civil forfeiture – was significant and not, as the government suggests, a hollow victory.

4

1    For several reasons, it is advantageous for the government to seize property through
2    the civil forfeiture statutes.  For one thing, a conviction is necessary to uphold a criminal
3    forfeiture whereas conviction is irrelevant in a civil forfeiture proceeding.  Thus, to prevail in
4    a criminal forfeiture, the government must first satisfy the substantially higher burden of
5    proof that accompanies a criminal trial.  Moreover, in contrast to the limited discovery
6    afforded to the government in criminal trials, in civil forfeiture proceedings the government
7    may avail itself of the full range of civil discovery tools available under the Federal Rules of
8    Civil Procedure.  See 3 Crim. Prac. Manual § 107:4 (2008).  "Another huge advantage of
9    civil forfeiture for the government is that indigent claimants generally do not have counsel,
10   whereas defendants facing a criminal forfeiture allegation are entitled to court-appointed
11   counsel to defend against the charges but also to protect their property rights."  Id.  This is all
12   to say that when a claimant prevails in a civil forfeiture action, and thereby forces the
13   government to seize property through the criminal forfeiture statutes, the claimant has
14   succeeded on a significant issue and has achieved meaningful benefit by forcing the
15   government to proceed through a more burdensome process.  For these reasons, there can be
16   no doubt that a claimant who prevails in a civil forfeiture action obtains an alteration in the
17   legal relationship of the parties, regardless of whether the government then decides to re-
18   seize the property through criminal forfeiture.

19   Second, there was a judicial imprimatur in the form of the Court's order granting
20   Eurofed's motion for summary judgment.  A judgment on the merits provides the judicial
21   imprimatur necessary to justify an award of attorney's fees.  See Tipton-Whittingham v. City
22   of Los Angeles, 316 F.3d 1058, 1062 (9th Cir. 2003) (citing Buckhannon, 532 U.S. at 604-
23   05).  Hence, Eurofed "substantially prevailed" when the Court granted summary judgment
24   and dismissed the government's civil forfeiture complaint.

25   II. Convicted of a Crime

26   The government maintains that even if Eurofed substantially prevailed, it is barred
27   from obtaining attorney's fees because 28 U.S.C. § 2465(b)(2)(B) precludes an award of fees
28   to a claimant "if the claimant is convicted of a crime for which the interest of the claimant in

5

the property was subject to forfeiture under a Federal criminal forfeiture law." As the Second Circuit has explained, CAFRA's attorney's fees provision does not apply if the claimants were "in a word, convicted." United States v. Khan, 497 F.3d 204, 209 n.6 (2d Cir. 2007).

Section 2465(b)(2)(B) does not preclude Eurofed from an award of fees for a very simple reason: Eurofed was never indicted with and convicted of a crime, such as wire fraud, that would subject their property to criminal forfeiture. Ukranian Prime Minister Pavel Lazarenko was convicted of wire fraud, but Eurofed – and not Lazarenko – is the claimant in this case.

The government has not sufficiently demonstrated that Eurofed may be held accountable for Lazarenko's conviction as his alter ego. As Judge Jenkins previously recognized, the trial record does not support the conclusion that Eurofed and Lazarenko are coextensive. Accordingly, Eurofed is entitled to reasonable attorney's fees and costs.

### III. Reasonable Fees & Costs

The customary method of determining reasonable fees is known as the lodestar method. See Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). "The lodestar determination has emerged as the predominate element of the analysis" in determining a reasonable attorney's fee award. Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987). The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. See McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).[1] After making that computation, the Court then assesses whether it is necessary to adjust the presumptively

---

[1] Because Eurofed obtained a significant benefit, the Court rejects the government's argument that Eurofed is only entitled to nominal fees because any victory was de minimis. In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court created an exception to the general rule governing a district court's calculation of attorney's fees. The Court held that "nominal damages" cases in which the relief is de minimis are exempted from the general requirements that govern the calculation of attorney's fees, including the requirement that a lodestar first be calculated. 506 U.S. at 116-18 (O'Connor, J., concurring). But even if Eurofed did not obtain monetary relief by ensuring return of the Bank of America funds, "[n]ominal relief does not necessarily a nominal victory make." Id. at 121. Eurofed achieved a significant nonmonetary result for the reasons explained in Part I, and therefore application of the Farrar exception would be inappropriate.

6

1  reasonable lodestar figure on the basis of the so-called Kerr factors that are not already
2  subsumed in the initial lodestar calculation.  Id.

3       Eurofed requests fees at an hourly rate of between $345-640 per hour.  The Court
4  finds that the rate requested by counsel reflects the "rate prevailing in [the Northern District
5  of California] for similar work performed by attorneys of comparable skill, experience, and
6  reputation."  Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008)
7  (quotation omitted).  The government has failed to adduce any evidence – in the form of
8  declarations or otherwise – suggesting that the requested rates are inflated.  In the absence of
9  such contrary evidence, the Court assumes that Eurofed's requested rate is reasonable.  See
10 Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 947 (9th Cir. 2007).

11      Eurofed requests fees for a total of 703 hours.  After a thorough review of Eurofed's
12 submission, the Court concludes that the requested hours are reasonable and not "excessive,
13 redundant, or otherwise unnecessary."  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

14      Because this is not the "rare and exceptional case[]" that calls for an upward or
15 downward multiplier, Welch, 480 F.3d at 946, the Court awards Eurofed fees in the
16 requested amount of $289,463.75.

17      Eurofed also requests costs in the amount of $10,279.05.  Other than a sheet
18 ostensibly showing the monthly costs incurred, Eurofed's cost request is wholly unsupported
19 by documentation.  Because Eurofed has failed to bear its burden of demonstrating that the
20 costs incurred were reasonable, costs are denied.  See Trustees of Directors Guild of
21 America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000) (holding
22 that where documentation supporting request for attorney's fees is inadequate, district court
23 is free to reduce applicant's fee award accordingly).

24      **IT IS SO ORDERED.**

Dated: July 2, 2008

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE